### Erdix F. Currier, Appellant, *v.* Hezekiah Ford, Appellee.

#### APPEAL FROM KANE.

Where property is with a person who has advanced money upon it, and which he is to keep in his own right until he shall be reimbursed, he may replevy it from an attaching creditor ; and unless it is made to appear that the attaching party was really a creditor, he cannot complain that it was a design to protect the property for the debtor.

The rights of the parties must depend upon the facts existing at the time the writ issued.

The writ of attachment does not of itself show that the defendant in it was a debtor of the plaintiff. It only shows that the officer who made the attachment acted in behalf of an assumed creditor.

This was an action of replevin, brought by the appellee against the appellant in the Kane Circuit Court, for wrongfully taking and detaining one span of horses. The defendant plead, 1st, non cepit ; 2nd, property in defendant ; 3rd, property in one Loren Heath ; 4th, an avowry, setting out the fact that he, as one of the deputy sheriffs of Kane county, took said property by virtue of a writ of attachment issued out of the Kane Circuit Court, on the 12th day of March, 1860, wherein Lawrence Kennedy was plaintiff, and Loren Heath defendant, which writ of attachment he executed by attaching the said property.

The plaintiff in the replevin suit, as to the 2nd plea, filed his replication, traversing it as to the horses being the property of the defendant, etc.; same as to the 3rd plea; and as to the 4th replies doubly: First, that the property was not the property of Heath; Secondly, that said Currier was not, as alleged in said plea, a deputy sheriff.

The case was tried at the November term of said court for 1860, before I. G. WILSON, Judge, and a jury, and resulted in a verdict in favor of the plaintiff in replevin. Appellant moved for a new trial, which was overruled.

The appellant, to maintain the issue, on the trial, proved by one *Alonzo L. Lovell*, that he resides at Courtland, De Kalb county; that on the 1st of March, he was the owner of the horses in question; that Loren Heath came to him to purchase them; that Heath purchased them—was to pay $275 for the horses, and a set of double harness. Heath paid him $35, and said, "I want you to go to Lodi with me." I said to him, "Hezekiah Ford is here; may be you can get the money of him." He said, "where is Ford?" I said to him, "he is in town;" he said, "don't tell Ford that I have paid you anything on the price." Soon after came in with Ford, and pointed to the harness, and said he, "that is the harness." Ford then said, "$240 is the sum you want;" I replied, "yes." Ford handed over the $240. Then Heath said to me, "Now, Lovell, I want you to understand this—when I pay Ford $240 I am to have the horses." Then we went to the door; some man called Ford, and he stopped. I went to the barn with Heath. I led out one of the horses, and gave it to Heath, and brought the other one around, and gave it to Ford; next day, sent the harness to Lodi, to Ford; shipped the harness to Ford because they, Ford and Heath, so directed. (Lodi is about five miles from Courtland.) Can't say, positively, but think it was Ford who gave me directions to do so. Ford was to have the horses until he was paid the $240.

A witness testified that he lived at Lodi, on the first of March, 1860, was in the employ of Ford, was at work around Ford's store, part of the time, and teaming some, about the middle of March. Identity of property was admitted by defendant. The horses were kept in barn; saw the horses the day they were brought home; they were opposite Ford's store; from that time I had charge of them for Ford. I worked them on Ford's farm harrowing, and putting in grain. The defendant admitted the taking of the horses in question.

A witness for the appellant stated that he knew the horses; that Heath started for California with the Lovell horses from his house, about seven o'clock, on Sunday evening. Stated on

32

cross-examination, that Ford brought up the horses on Saturday evening, to my house. Heath paid him $240. Heath left on the next Sunday evening. There seemed to be some misunderstanding about a note; one claimed that it was paid, and the other that it was not paid. I saw Heath paying two hundred dollars, or over. After they got through, they went down to the stable, and Ford turned out the horses. At the time of the conversation about the note, Heath was much excited, claiming that it was or had been paid. Don't know where Heath got the money to pay for the horses; when he paid the money, he said, " There, Ford, is the money for your horses."

Appellant neglected to prove the fact, or offer any evidence whatever, on the trial of the case, to show that the plaintiff in the attachment suit (Kennedy) was a creditor of Heath's, or that judgment had been obtained on it in favor of the plaintiff, or that it was still pending.

No objection was taken at the trial, by the appellant, to any evidence that was offered.

The plaintiff asked the court to give the following instruction, which was done :

A sale or a pledge of personal property may be valid as between the parties, although void as against creditors, and hence if the jury in the present case, believe, from the evidence, that Ford, the plaintiff, advanced $240 towards the purchase of the horses in question, and took the horses in pledge to secure the repayment of the two hundred and forty dollars, such a pledge would vest a special property in Ford. And if the jury further believe that the defendant took the property on the writ of attachment, the plaintiff is entitled to recover; the defendant not having offered any proof that the plaintiff in the attachment was a creditor of Heath, is not in a position to attach the pledge as being void against the creditors of Heath.

The court of its own motion gave the jury the following instruction :

The declaration of Heath as to his ownership of the property in question, not made in the presence or hearing of Ford, the plaintiff, cannot affect Ford, unless the jury believe, from the evidence, that at the time of making such declarations, Heath was in possession and exercising acts of ownership over the property by the permission of Ford.

To the giving of which said instructions the defendant excepted.

The defendant asked the court to give the following instructions, which were given :

If the jury believe, from the evidence, that Lawrence Kennedy had sued out of the Kane Circuit Court, in the month of March,

1860, a writ of attachment against Loren Heath, and said writ was placed in the hands of Erdix T. Currier, a deputy sheriff of this county, and that said Currier, by virtue of said writ, levied upon and took possession of said horses, they being at the time of said seizure in the possession of said Heath, and owned by him, then the jury will find the issues in favor of the defendant.

If the jury believe, from the evidence, that the horses in question were bought by Heath, and paid for either by him or his money, and that Heath took and continued in possession of them, and whilst so in possession they were taken up on, and by virtue of the attachment writ, named in the fourth plea herein which is the same taking complained of in this cause, then the jury must find for the defendant.

The defendant asked the court to give the jury, as law in the case, the following instructions, which were refused:

If the jury believe, from the evidence, that the horses in question were levied upon and taken, as in the fourth plea alleged, and that Heath was about to start for California, and that he purchased the horses in question from Lovell, and paid said Lovell a portion of the purchase money, and at the time of said partial payment exhibited to said Lovell money sufficient to have paid the entire contract price for said horses, but left the office of said Lovell, and procured Hezekiah Ford, the plaintiff, to come to the office of said Lovell and pay the balance of said purchase money, which was the money of said Heath, and that Ford and Heath took the horses away with them, saying, that Ford should hold possession of said horses until Heath paid Ford, and that afterwards, before and at the time of the levy in the attachment suit mentioned in the plea herein, Heath had possession of said horses, and whilst so in his possession the defendant herein took said horses upon and by virtue of said attachment writ, which is the same taking complained of in this case, then the jury must find for the defendant.

If the jury believe, from the evidence, that Heath purchased the horses in question from Lovell, and paid a portion of the purchase money, and then procured Ford to pay the balance of the purchase with the money of him, Heath, and this was a contrivance of Heath and Ford in order to keep said horses from being levied upon by the creditors of Heath, he being the owner of said horses, this is in law a fraud, and the jury should find for the defendant.

That possession of the property in question must accompany the ownership, that being one of the strongest evidences of title, for if the jury believe, from the evidence, that Heath was the purchaser of the horses in question, and that Ford advanced a

portion of the purchase money, and was to hold possession of the horses as his security for said advanced money, and yet permitted Heath to be and remain in possession of said horses, and whilst so possessed of them, the defendant Currier, being a deputy sheriff, and having in his possession, as such, said writ of attachment in the fourth plea herein named, and that in virtue of said writ, he seized and took said horses, which is the taking complained of in this case, then the law says said horses were liable to be so taken by said officer, and the jury must find for the defendant.

That if the jury believe, from the evidence, that Heath was the owner of the horses in question, and that Ford claimed a lien upon them, and that Currier, being deputy sheriff, and having in his possession the attachment writ named in the pleadings, to execute, and that he took the horses in question upon and by virtue thereof, as Heath's, and from Heath's possession, which is the same taking complained of in this case, then the law says said taking was lawful, and that Ford's claim to said property amounts to nothing in this case, and the jury must find for the defendant.

If the jury believe, from the evidence, that Heath, on the day of the purchase, took said horses in question to the stable of Hawley, in Lodi, where Heath and Ford resided, and procured Hawley to keep said horses three nights and two days, and that Heath then removed said horses to another stable in said village of Lodi, and there watered and fed and otherwise cared for said horses, and so continued until the levy and taking complained of in this case, this is in law and fact an actual possession on the part of Heath, and the jury must find in this case for the defendant.

Whilst it is true that fraud will not be presumed, but must be proven by those alleging it, yet the jury have a right, in determining the question of ownership in this case, to take into consideration the manner of the purchase of the horses in question, as shown by the evidence; also the mode of payment as shown by the evidence, and the facts, if such exist by the evidence, that Heath was about to depart permanently from the State, and that Heath was, as in the writ of attachment shown, indebted to Kennedy; that Heath was possessed of the money wherewith to have paid for said horses at the time of said purchase; that Heath afterwards did start for California in the night-time with said horses. Finally, the jury have the right to consider fully every fact and circumstance, as shown by the evidence, on the alleged question of ownership in this case; and if, from said evidence, the jury believe that Heath and Ford were contriving to keep said property away from the creditors of Heath, the

same in fact belonging to Heath, this in law is fraud, and the jury should find for the defendant.

Errors assigned:

The court erred in admitting improper evidence to go to the jury.

The court erred in refusing to allow the defendant to give competent and proper evidence to the jury.

The court erred in overruling the defendant's motion for a new trial.

The court erred in giving the instructions asked for on the part of the plaintiff, as the law of the case.

The court erred in refusing to give to the jury the defendant's instructions asked for as the law of the case.

A. M. HERRINGTON, for Plaintiff in Error.

CATON, C. J. When we first considered this case in conference, and determined to reverse the judgment, we were laboring under a misapprehension as to the chronological order in which the events stated in the record occurred. We then understood that Heath had paid to Ford the two hundred and forty dollars, and taken possession of the horses and taken them away, before the levy of the attachment upon them by Currier. If that were so, then it was no business of Ford whether Currier had a right to take them or not. But upon a more careful examination of the record, we are satisfied that we were mistaken in this. The order in which the events occurred, although there is much obscurity about some of the dates, we are satisfied was this: First, the purchase of the horses by Heath about the first of March, at which time Ford, at the request of Heath, paid to Lovell two hundred and forty dollars of the purchase money, upon the agreement that he should take and hold the horses till that amount was paid him by Heath, when he (Heath) should take and hold the horses in his own right. As the case stood, it was a matter of no moment whether this was a fraudulent maneuver between Heath and Ford, for the purpose of protecting the property from Heath's creditors or not, for this record does not show that Kennedy, at whose suit the attachment was issued, was such creditor, and until that was shown, the officer executing the attachment could not attack the *bona fides* of the arrangement between Heath and Ford. The only real question then was, did Ford in fact take possession of the horses, and hold that possession till they were taken by the deputy sheriff? Upon this point the evidence is somewhat conflicting, but we agree with the jury that the weight of evidence is sufficient to show the possession and control by Ford. The next event was

the levy of the attachment, then the replevy of the horses under the writ issued in this cause; and the rights of the parties must be determined as they existed at that time, and it was after this that Heath redeemed the horses by the payment of the two hundred and forty dollars to Ford, and took possession of them and started for California.

The instructions which were refused were none of them proper, for they did not require Currier to show that he was acting for a creditor of Heath, and that, as we have before seen, was indispensable before he could question the good faith of the transaction between Heath and Ford. The writ of attachment was not sufficient of itself to show that Heath was a debtor of Kennedy, the plaintiff in the attachment. That only showed that Currier acted in behalf of one who claimed to be a creditor of Heath. But we have repeatedly decided, this was not enough.

None of the exceptions taken to the rulings of the court upon the admissibility of evidence were well taken.

The judgment must be affirmed.

*Judgment affirmed.*